UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE TRAVELERS INDEMNITY
COMPANY OF CONNECTICUT,
a Connecticut corporation,

       Plaintiff,                         CIVIL ACTION NO. 04 CV 71495 DT

      v.                                DISTRICT JUDGE BERNARD A. FRIEDMAN

TOTAL EMPLOYEE MANAGEMENT,    MAGISTRATE JUDGE VIRGINIA MORGAN
INC., a Michigan corporation,
PROTECTIVE INSURANCE AGENCY,
a Michigan corporation, and DANIEL GUY,
a North Carolina resident.

       Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the court on the motion of plaintiff Travelers Indemnity (Travelers) for summary judgment on Counts I, II, III, IV, and VI of its complaint against each defendant: Total Employee Management, Inc. (TEMI), Protective Insurance Agency (Protective) and Daniel Guy (Guy). All defendants are represented by the same counsel. Oral argument was held before the magistrate judge. For the reasons discussed in this Report, it is recommended that a judgment of liability only be entered against TEMI, Guy, and Protective as to Counts I, II, III and IV. Whether cast as fraud, silent fraud or innocent misrepresentation, TEMI and Guy and Protective made false representations relied upon by Travelers and which caused damages.

TEMI breached the contract by failure to pay premiums due as alleged in Count IV.  With respect to Count VI (action to pierce the corporate veil), plaintiff has established without a dispute a series of factors sufficient to entitle it to a judgment as a matter of law.  However, plaintiff has not established that it is entitled to judgment as a matter of law as to the amount of damages it has sustained.  It is recommended that all those claims be decided by the trier of fact.

This is a civil action arising out the failure to pay premiums to Travelers for workers compensation coverage.  In the state of Michigan, an employer is required to maintain workers compensation coverage for its employees.  Cost of the insurance is set by means of a premium rate formula which takes into account the nature of the employer's business activities, prior business experience, number of employees, type of work performed by those employees, and total payroll costs.  The employer must submit an application to an insurance company or agent listing those items and the legal identity of the company seeking insurance.  If an employer cannot obtain workers compensation insurance coverage through the voluntary market, coverage can be obtained through the Michigan Workers Compensation Placement Facility (Facility).  When an employer submits an application to it, the Facility determines the eligibility of the risk and assigns the risk to an insurance carrier in the pool.  The insurance company issues a policy with an estimated premium.  Later, a final premium is determined using additional information, including the actual payroll and job classification codes.  At that time, either a refund or a bill for additional premiums is calculated.

In the instant case, TEMI is a professional employer organization (PEO), set up and run by Guy who is its 100% shareholder.  Protective is TEMI's insurance agent.   Before starting

TEMI, Guy was a licensed insurance agent in Michigan. He was familiar with the method of calculating insurance premiums, and understood that he agreed to provide full and accurate information to Travelers. (Ex. 4, pp 27-28, 34-35, 40, 46) TEMI operates by contract as the "general employer" for all or part of a separate company's labor force. See, *Entech Personnel Serivices, Inc v. Feliciano Trans., Inc.*, 2004 Mich. App. Lexis 3368 (2004) (Ex. 3 to Plaintiff's Motion). That is, TEMI provides human resource services for a fee to client companies. In that capacity, TEMI needed to have workers compensation insurance but was unable to obtain it through the voluntary market. In June, 2001, with the assistance of Protective, TEMI submitted an application to the Facility which assigned the risk to Travelers. TEMI, through Guy, set forth the alleged duties, class codes, and total payroll for its employees. Protective calculated the premium and the initial required deposit of $9,201. Travelers then issued a policy for June, 2001, through June, 2002, based upon TEMI's application, and billed for the estimated premium based on the information submitted. Consistent with its procedures, Travelers scheduled a "premium audit" in August, 2001, to better assess TEMI's risk and more accurately calculate the estimated premium due. After Guy canceled audits and delayed review, Travelers account manager Charles J. Jurack, performed the audit based on information submitted to him by TEMI and Guy. This audit determined that additional premium deposit was owed in the amount of some $38,000. Guy disputed this amount and then TEMI and Guy, through Protective, submitted additional supplementary documentation. It was not until February 25, 2002, that EMI issued a check, signed by Guy, for $38,014. (Ex. 13) On March 25, 2002, TEMI issued another check, also signed by Guy, in the amount of $38,039. (Ex. 14) Both checks were

returned April 1, 2002, for insufficient funds and Travelers canceled the policy the same date. (Ex. 2, 16)  Consistent with the terms of the policy, Travelers attempted to schedule a post-cancellation audit to ascertain the final premium.  Guy refused to cooperate and Travelers, using the information previously supplied by TEMI and applying the Facility's Premium Pricing Guidelines, determined that the total premium owed is $752,173.

### **Standard of Review**

In reviewing defendants' motion for dismissal and/or summary judgment, the court has examined affidavits and exhibits provided by both parties.  When the court considers materials submitted in addition to the pleadings, Federal Rule of Civil Procedure 12(b) provides that "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Rule 56 of the Federal Rules of Civil Procedure, provides in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

In ruling on a motion for summary judgment, the Supreme Court's decision in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), provides guidance.  The Court rejected a standard which required moving parties to support their motions for summary judgment with an affirmative evidentiary showing which tended to negate the essential elements of plaintiff's case.  *Id.*, 477 U.S. at 324.  Instead the Court said, "the burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the non-moving party's case." *Id.*  Of course, "inferences to be drawn from the

underlying facts must be viewed in the light most favorable to the party opposing the motion." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587-588 (1986).  Once the moving party has made this showing, the burden passes to the non-moving party to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *Id.*; *see also*, *Roby v. Center Companies*, 679 F.Supp. 664 (E.D. Mich. 1987).

Following the Supreme Court trilogy, the Sixth Circuit provided additional guidance.  As stated in *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), cases involving state of mind issues are not necessarily inappropriate for summary judgment.  However, the movant must meet the initial burden of showing the absence of genuine issue of material fact as to an essential issue of the non-movant's case.  This burden may be met by pointing that the non-movant has produced no evidence to support its case.  The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment.  In addition, the trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.  The trial court has more discretion than formerly to evaluate the respondent's evidence and the respondent must do more than simply show some metaphysical doubt as to material facts.  Where the record taken as whole could not lead a rational trier of fact to find for the respondent, the motion should be granted.  The trial court has some discretion to determine whether the respondent's claim is "implausible."

### 1. Counts I, II, III:  Fraud as to TEMI and Guy

As will be seen in the following discussions, it is impossible to separate the activities of TEMI from those of Guy in preparing the information submitted to Travelers.  TEMI acted through Guy, its 100% shareholder, in making the representations and causing the actions of Travelers.  What Guy knew, TEMI knew and vice versa.   A review of the record establishes that TEMI and Guy are liable for fraud.  Thus, their liability of the alternative theories of silent fraud and innocent misrepresentation will be discussed only briefly, *infra*.

In order to establish fraud and misrepresentation under Michigan law, plaintiff must prove a series of elements. In *Jim-Bob, Inc v. Mehling,* 178 Mich. App. 71, 89-90 (1989), the court delineated these as follows:  (1) defendant(s) made one or more material representations, (2) the representations were false, (3) that when the representations were made, defendant(s) knew they were false, or made them recklessly without any knowledge of their truth and as a positive assertion, (4) that defendants made the misrepresentations with the intent that they would be relied upon by plaintiff, (5) that plaintiff acted in reliance upon the representations, and (6) that plaintiff suffered damages.  Further, "it is a familiar principle that the agents and officers of the corporation are liable for torts which they personally commit, even though in doing so they acted for the corporation and even though the corporation is also liable for the tort." *Warren Tool Co v. Stephenson*, 11 Mich. App. 274, 300, 161 N.W.2d 133 (1968).  Where a defendant acts on his own behalf or is an officer or agent of a corporation, he is personally liable for torts in which he actively participates." *Trail Clinic, P.C. v. Block*, 114 Mich. App. 700, 709, 319 N.W.2d 638 (1982).

Plaintiff contends that it has established all the elements of fraud with respect to TEMI and Guy. The court agrees.

(1) TEMI made material representations about the number of employees, size of workforce and payroll. There were considerably more persons performing different jobs with higher classification categories (i.e., more insurance premiums) than TEMI set forth on the application.

(2) The representations are conceded to be false. This is not in dispute.

(3) That when the representations were made, TEMI and Guy knew they were false, or made them recklessly without any knowledge of their truth and as a positive assertion. The information submitted to Travelers on different occasions was internally inconsistent and was also wrong. The knowledge of the falsity of the statements follows not only from the internal inconsistencies of the information, and the fact that it grossly under-reported the amounts. The information gleaned from the audit determined that a much larger premium should have been tendered. However, in addition, TEMI's and Guy's pattern and practice of misrepresentations of employee information, followed by delay, disputes and ultimately non-payment in several other cases indicates knowledge, intent, an absence of mistake or accident. See, F.R.E. Rule 404(b). This pattern is evident from the business history admitted to by Guy in discovery. In prior actions, he entered into the same practice of which Travelers complains here. In earlier litigation, Guy agreed to a consent judgment for $1,180,000 in favor of Liberty Mutual Insurance against TEMI and ADAN (another Guy entity of a similar nature) and another consent judgment for non-payment of premiums for OBC, another PEO he created which was sued by its insurer. However,

neither Guy nor TEMI has paid any money to the defrauded insurance companies and Guy testified that he does not intend to pay any money owed on the consent judgments.  (Ex. 21, pp. 81-83)  Given this background, the application information, and the pattern and practice, there can be no serious dispute that both Guy and TEMI knew at the time they made these representations that the representations were false.

With respect to element (4), it cannot be disputed that TEMI through Guy made the misrepresentations with the intent that they would be relied upon by Travelers.  The information was necessary for calculation of the premium, the application containing the information was submitted for placement in the pool, and a check in the inaccurately low amount was given by TEMI and signed by Guy.

Clearly with respect to element (6), Travelers suffered damages.  This is not disputed.

Defendants dispute only one element of the fraud claim–number (5)–contending that Travelers did not act in reliance upon the representations.  This argument cannot be factually sustained and strains belief.  Travelers issued the policy upon accepting the initial premium determination.  It appears to have paid out approximately $37,000 in claims and failed to receive the insurance premium it was properly due.  Defendants argue for summary judgment by stating: "Since plaintiff audited the payroll of TEMI monthly, interim (two months into the policy) and a final audit, it cannot credibly argue that it relied upon the information in the application.  The premium auditor testified that there would be variances in payroll with a PEO.  Moreover, new premium notices were sent after the audit." (Brief page 5)  This may be true, but it does not negate reliance.  Pursuant to the intent that Travelers rely on the statements in the application,

Travelers did rely on the "facts" in the application when it issued the policy and agreed to the contractual undertaking in return for TEMI's tender of the estimated premium of some $9,000. The intent of TEMI and Guy (and Protective) was clearly to cause Travelers' reliance. Travelers did so rely, issuing the policy and ultimately paying out some $37,000 in claims and suffering deprivation of substantial premiums owed. The false representations were clearly relied upon when Travelers issued the policy. To argue otherwise is disingenuous. Travelers is entitled to summary judgment as to liability on this claim against both TEMI and Guy.

### 2.     Count I:  Liability for Fraud as to Protective

Protective is and has been the agent of TEMI. Robert Coston is the president of Protective and admits that Protective calculated the premium for TEMI and other entities controlled by Guy. He also testified that he had "no reason" to dispute the premium adjustment notice submitted to TEMI in the amount of $763,315. As plaintiff points out, "ordinarily the independent insurance agent or broker is an agent of the insured, not the insurer." *Harwood v. Auto Owners Ins. Co.*, 211 Mich. App. 249, 254, 535 N.W.2d 207 (1995). Clearly, in this case Coston was not an agent of Travelers as no relationship was established and the application was submitted to the Facility which in turn assigned the risk to Travelers. Coston was also paid consulting fees by Guy for new clients. Travelers argues that "there can be no question that Protective recklessly submitted fraudulently false information to Travelers without any knowledge as to whether it was true but intending that Travelers nonetheless act upon the representations." The court is of the opinion that such a conclusion could follow but that it cannot be said that no reasonable jury would find

otherwise.[1]  Here, the record is not sufficient to say that Travelers is entitled to judgment as a matter of law against Protective on the fraud claim.  What Protective knew or should have known, whether Coston's relationship with Guy can be imputed to Protective, and what he knew or when he or other persons at Protective knew it needs to be more clearly set forth and determined by the trier of fact.  Such is the heart of jury trials.  Where state of mind is in issue, it often can be evaluated only by looking to circumstantial evidence.  As Wright & Miller discuss, "inasmuch as a determination of someone's state of mind usually entails the drawing of factual inferences as to which reasonable people might differ–a function traditionally left to the jury–summary judgment often will be an inappropriate means of resolving an issue of this character."  Wright-Miller-Kane, Civil 3d §2730.  Material facts regarding knowledge or lack thereof by Coston and insufficient facts to determine his credibility preclude summary judgment as to fraud here.

### 3. Count II and III: Silent Fraud and Innocent Misrepresentation as to TEMI, Guy, and Protective

Plaintiff argues two additional bases for liability of the defendants–silent fraud and innocent misrepresentation.  Because the court finds that plaintiff has established fraud by TEMI and Guy it is unnecessary to further discuss their liability.  However, if the district court should disagree regarding the fraud count, it appears that TEMI and Guy would be liable under the doctrine of silent fraud or for innocent misrepresentation.  Material facts regarding Protective's knowledge preclude liability based on fraud.  However, plaintiff has adduced sufficient facts to establish Protective's liability based on at least innocent misrepresentation.

---

[1] But since only one attorney represents TEMI, Guy, and Protective, it is difficult to see how they would have inconsistent defenses at trial.

"Silent fraud" is a doctrine of Michigan law–similar to causes of action in other states for "constructive fraud." It is applicable in commercial transactions under which there exists a legal duty to make disclosure in response to specific inquiries and its parameters were carefully outlined by the Michigan Supreme Court. *United States Fidelity and Guaranty Co. v. Black*, 412 Mich. 99, 125, 313 N.W.2d 77 (1981). Where one party to a commercial transaction makes specific inquiries regarding the subject matter of the transaction, and the other party makes false, misleading and/or incomplete representations in response to those inquiries, the defendant may be held liable for silent fraud. *M&D Inc. v. McConkey*, 231 Mich. App. 22, 32-33, 573 N.W.2d 281, 285 (1998). In distinguishing intentional and innocent misrepresentation, the court noted that the actions are substantially similar but the innocent misrepresentation rule does not require scienter or proof of the intention that the misrepresentation be acted upon. *U.S. F. & G. v. Black*, 313 N.W.2d at 85. "It [is] unnecessary for plaintiffs to prove fraudulent purpose or intent upon the part of defendants, or those representing them." *Boss v. Tomaras*, 241 Mich. 540, 543 (1928), cited in *Black*, 313 N.W.2d at 85.

The information as to payroll and employees was provided by Protective on behalf of TEMI in the course of applying for a policy. That information significantly under reported the facts. Plaintiffs relied on that information and the expectation that the tendered premium was fairly calculated at the time it issued the policy. This reliance was reasonable. Plaintiffs are entitled to a summary judgment with respect to Protective's liability.

    **4.**    **Count IV–Breach of Contract as to TEMI**

TEMI and Guy admit that TEMI did not pay the premiums due and owing under the policy. The policy language is clear, that premiums must be paid. "It is well settled that a contract which is unambiguous must be enforced as written." *Industrial Steel Stamping v. Erie State Bank*, 167 Mich. App. 687 (1988). There is no dispute with respect to the evidence that TEMI breached the contract. Travelers does not cite to any contractual language with respect to the remedy for breach and does not argue as to the basis upon which it calculated damages, which it alleges to be $752,173. Thus, it is entitled to judgment of liability only.

**5.     Count VI–Action to Pierce the Corporate Veil**

Travelers admits that the law treats the corporation as an entirely separate entity from its stockholders, even where one person owns all of the corporation's stock. *Kline v. Kline*, 104 Mich. App. 700, 702 (1981). Travelers further admits that there is no one single rule for when a corporate entity may be disregarded. *Papo v. Aglo Restaurants of San Jose, Inc.*, 149 Mich. App. 285, 301 (1986). Courts must consider all relevant facts in light of a corporation's economic justification to determine if the corporate forum has been abused. *Klager v. Robert Meyer Co.*, 415 Mich. 402, 411-412 (1982). Plaintiff must generally establish that (1) the corporate entity is a mere agent or instrumentality of its shareholders or another entity; (2) the corporate entity was used to commit a fraud or wrong; and (3) the plaintiff suffered an unjust loss or injury. *SCD Chemical Distributors Inc. v. Medley*, 203 Mich. App. 374 (1994). Here, as discussed above, the court finds that no material facts in dispute preclude a finding of (2) and (3). With respect to (1), Travelers offers a variety of factors that they contend establish that the corporation is a mere agent or instrumentality of Guy. (See, Brief in Support of Amended and Supplemented Motion

for Summary Judgment)  These are not disputed by TEMI or Guy in the brief and they offer no evidence to the contrary.

These factors are as follows:

- Guy admits that he did not pay the premium owed to Travelers under the policy.

- Guy admits that he refused Travelers request for information so that a final audit could not be completed.

- Guy did not maintain complete financial records for TEMI.

- Guy employed his wife, mother-in-law, and daughter at TEMI.

- Guy failed to list his daughter as employee of TEMI, despite his obligation to do so under the policy.

- After the policy lapsed for non-payment, Guy steered TEMI's clients to a newly formed PEO run by his daughter Maria Guy.

- Guy has exhibited a pattern over several years of forming PEOs, looting them, shutting them down, and opening others.  Guy is in litigation currently for failure to return employees §401k moneys from PEO "Guy, Inc.," a PEO he formed right after TEMI was shut down.  Guy formed a PEO called "OBC" prior to forming TEMI.  OBC was sued by its insurance carrier for failure to pay Worker's Compensation Insurance premiums.  The lawsuit was settled by Guy who has not paid on such judgment.  Guy also formed a PEO called "ADAN" where its insurance carrier sued for non-payments of Workers Compensation insurance premiums, it was settled by Guy pre-trial but Guy has not paid on that judgment.

- TEMI went out of business in 2002. The preceding year–when the misinformation was being submitted to Travelers and they were scheduling audits and he was writing NSF checks for premiums–Guy paid himself over $200,000 in salary and commissions. He paid his wife, as an employee of TEMI, $120,000 for performing general clerical work.
- He used the proceeds of his "business activities" to purchase a half-million dollar personal residence in Dryden, Michigan, and a second half-million dollar personal residence in North Carolina.
- After shutting down TEMI, without sufficient assets for its creditors and moving to North Carolina, Guy formed eight (8) new entities in North Carolina.
- He subsequently purchased additional real estate, including 230 acres in northern Michigan, a 65 acre parcel in North Carolina, and through his additional entities more property in excess of $500,000.
- He and his wife purchased a second home in North Carolina for $180,000.
- He has 65 acres of land and a storage building he intends to award his wife in a divorce settlement and another building in North Carolina will be awarded to him.

Based on these undisputed facts, the court finds that no reasonable jury could believe that Guy had honored the law of corporations, a law which imposes the fiction of a corporation onto a person's actions in order to serve the ends of justice. *Allstate Ins. Co v. Citizens Ins Co of Am*, 118 Mich. App. 594, 600 (1982). Indeed, Guy has subverted this legal doctrine and used the corporation to subvert justice and avoid his legal obligations and attempt to defeat the rights of his

creditors. Travelers is entitled to summary judgment on Count VI and all judgments entered in this case against TEMI must also be entered against Guy for his disregard of the corporate identity.

It still remains, however, for Travelers to prove its damages. It pointed to portions of a "Basic Manual for Workers Compensation and Employers Liability Insurance." This is not sufficient to prevail on a Rule 56 motion. It may be that expert testimony or further clarifications of the audit may suffice, but on the basis of the record here, it cannot be said that a jury could find only that damages were in the amount of $752,173, the amount requested by Travelers. Thus, plaintiff has not met the initial burden of showing the absence of a genuine issue of material fact in order to be entitled to judgment as a matter of law.

Accordingly, it is recommended that the plaintiff's motion be granted in part. It is further recommended that a judgment of liability be entered against TEMI and Guy as to Counts I, II and III; against Protective as to Counts II and III; against TEMI and Guy as to Count IV, and against TEMI and Guy as to Count VI. It is further found that plaintiff has not established that it is entitled to judgment as a matter of law as to the amount of damages it has sustained. It is recommended that all those claims be decided by the trier of fact.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to

raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. <u>Willis v. Secretary of HHS</u>, 931 F.2d 390, 401 (6th Cir. 1991); <u>Smith v. Detroit Fed'n of Teachers Local 231</u>, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

        s/Virginia M. Morgan
        VIRGINIA M. MORGAN
        UNITED STATES MAGISTRATE JUDGE

Dated: August 5, 2005

---

**Proof of Service**

The undersigned certifies that a copy of the foregoing report and recommendation was served on the attorneys of record by electronic means or U.S. Mail on August 5, 2005.

        s/Jennifer Hernandez
        Case Manager to
        Magistrate Judge Morgan

---